Paul B. Gaffney (State Bar No. 345431)
pgaffney@wc.com
Charles L. McCloud (*pro hac vice*)
lmccloud@wc.com
Ricardo Leyva (State Bar No. 319939)
rleyva@wc.com
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
Tel: (202) 434-5000
Fax: (202) 434-5029

Jeffrey E. Faucette (State Bar No. 193066)
jeff@skaggsfaucette.com
SKAGGS FAUCETTE LLP
Four Embarcadero Center, Suite 1400
San Francisco, CA 94111
Tel: (415) 295-1197
Fax: (888) 980-6547

*Attorneys for Plaintiff Genentech, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| GENENTECH, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BIOGEN MA INC.,<br><br>Defendant. | Case No. 4:23-cv-00909-YGR<br><br>**JOINT SET OF PROPOSED JURY INSTRUCTIONS**<br><br>Pretrial Conference:  June 9, 2025<br>Trial Date:  June 30, 2025 |

Plaintiff Genentech, Inc. and Defendant Biogen MA Inc., by and through their attorneys of record (collectively, the "Parties"), hereby submit these Joint Proposed Jury Instructions pursuant to Paragraph 3(g) of the Court's Standing Order Re: Pretrial Instructions in Civil Cases (last updated March 17, 2025).

The Parties respectfully reserve the right to amend or supplement these proposed instructions and their objections thereto as the case proceeds toward trial, as the Parties continue to meet and confer regarding these instructions, and as the Court considers these proposals and objections.

| No. | Description | Authority | Whether the Parties Stipulate or Object |
|---|---|---|---|
| **Preliminary Instructions** | | | |
| 01 | Duty of Jury (Court Reads and Provides Written Instructions at End of Case) | 9th Cir. No. 1.4 | Stipulate |
| 02 | Claims and Defenses | 9th Cir. No. 1.5 | Stipulate |
| 03 | Burden of Proof – Preponderance of the Evidence | 9th Cir. No. 1.6 | Stipulate |
| 04 | What is Evidence | 9th Cir. No. 1.9 | Stipulate |
| 05 | What is Not Evidence | 9th Cir. No. 1.10 | Stipulate |
| 06 | Evidence for Limited Purpose | 9th Cir. No. 1.11 | Stipulate |
| 07 | Direct and Circumstantial Evidence | 9th Cir. No. 1.12 | Stipulate |
| 08 | Ruling on Objections | 9th Cir. No. 1.13 | Stipulate |
| 09 | Bench Conferences and Recesses | 9th Cir. No. 1.20 | Stipulate |
| 10 | Credibility of Witnesses | 9th Cir. No. 1.14 | Stipulate |
| 11 | Expert Opinion Testimony | 9th Cir. No. 2.13 | Stipulate |
| 12 | Deposition in Lieu of Live Testimony | 9th Cir. No. 2.4 | Stipulate |
| 13 | Use of Interrogatories | 9th Cir. No. 2.11 | Stipulate |
| 14 | Use of Requests for Admission | 9th Cir. No. 2.12 | Stipulate |

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

| 15 | Transition Instruction | Judge Gonzalez Rogers' Standing Order Re: Pretrial Instructions in Civil Cases (Updated March 17, 2025) | Stipulate |
|---|---|---|---|
| **Genentech's Claim – Breach of Contract** | | | |
| 16 | Genentech's Claim: Breach of Contract<br><br>Breach of Contract – Introduction | CACI 300 | **The parties propose conflicting modifications.** |
| 17 | Patent – Definition | N.D. Cal. Model Patent Jury Instructions, August 2017 (updated October 2019), at C.1 Appendix (Glossary) (as modified). | Stipulate |
| 18 | Genentech's Claim: Breach of Contract<br><br>Breach of Contract – Essential Factual Elements | CACI 303 | Stipulate |

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

| 19 | Genentech's Claim: Breach of Contract<br><br>Interpretation – Disputed Words | CACI 314*<br><br>*With modifications:<br><br>• Cal. Civil Code § 1647<br><br>• CACI No. 318<br><br>• *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (1998)<br><br>• *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 956 (2003)<br><br>• 1 Witkin, Summary of California Law Contracts (11th ed. 2017), § 767(2)<br><br>• 1 Witkin, Summary of California Law Contracts (11th ed. 2017), § 772(1)<br><br>• 2 Matthew Bender Practice Guide: California Contract Litigation, Ch. 21, *Parties' Intentions at Time of Contracting Governs Interpretation*, 21.14[1] | **The parties propose conflicting modifications.** |
| 20 | Genentech's Claim: Breach of Contract<br><br>Interpretation – Meaning of Ordinary Words | CACI 315 | Stipulate |

| 21 | Post-Expiration Royalties | *Pacesetter Inc. v. SurModics, Inc.*, No. CV 11-3964 RSWL FFMX, 2011 WL 5075611 at *4 (C.D. Cal. Oct. 25, 2011)<br><br>*Pacesetter Inc. v. SurModics, Inc.*, 520 F. App'x 579 (9th Cir. 2013)<br><br>*AM Int'l, Inc. v. Graphic Mgmt. Assocs., Inc.*, 44 F.3d 572, 574 (7th Cir. 1995) (Posner, J.). | **Genentech objects to this instruction in full.** |
| --- | --- | --- | --- |
| 22 | Genentech's Claim: Breach of Contract<br><br>Interpretation – Meaning of Technical Words | CACI 316 | Stipulate |
| 23 | Genentech's Claim: Breach of Contract<br><br>Interpretation – Construction of Contract as a Whole | CACI 317 | Stipulate |

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

| 24 | Genentech's Claim: Breach of Contract<br><br>Interpretation – Industry Custom or Practice | Special Instruction<br><br>• *Brown v. Goldstein*, 34 Cal. App. 5th 418, 436 (2019)<br><br>• *Heggblade-Marguleas-Tenneco, Inc. v. Sunshine Biscuit, Inc.*, 59 Cal. App. 3d 948, 956 (1976)<br><br>• *Southern Pacific Transportation Co. v. Santa Fe Pacific Pipelines, Inc.*, 74 Cal. App. 4th 1232, 1244 (1999)<br><br>• 1 Witkin, Summary of California Law Contracts (11th ed. 2017), § 778<br><br>• 2 Matthew Bender Practice Guide: California Contract Litigation, Ch. 21, *Terms May Be Explained by Course of Dealing, Trade Usage, and Course of Performance*, 21.24[1]-[2] | **Biogen objects to this instruction in full.** |
| 25 | Genentech's Claim: Breach of Contract<br><br>Interpretation – Construction by Conduct | CACI 318 | Stipulate |

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

| 26 | Genentech's Claim: Breach of Contract<br><br>Interpretation – Party's Understanding of its Other Agreements | Special Instruction<br><br>• *Firlotte v. Jessee*, 76 Cal. App. 2d 207, 211 (1946)<br><br>• *Faigin v. Signature Grp. Holdings, Inc.*, 211 Cal. App. 4th 726, 748 (2012)<br><br>• *Brawthen v. H & R Block, Inc.*, 52 Cal. App. 3d 139, 148 (1975)<br><br>• *Heston v. Farmers Insurance Group*, 160 Cal. App. 3d 402, 414-15 (1984)<br><br>• 1 Witkin, Summary of California Law Contracts (11th ed. 2017), § 779<br><br>• 1 McCormick on Evidence § 198 (9th ed.) | **Biogen objects to this instruction in full.** |
| 27 | Genentech's Claim: Breach of Contract<br><br>Introduction to Contract Damages | CACI 350 | Stipulate |
| **STOP (CLOSING ARGUMENTS)** | | | |
| **Post-Closing Instructions** | | | |
| 28 | Duty to Deliberate | 9th Cir. No. 3.1 | Stipulate |
| 29 | Consideration of Evidence – Conduct of the Jury | 9th Cir. No. 3.2 | Stipulate |
| 30 | Communication with Court | 9th Cir. No. 3.3 | Stipulate |
| 31 | Return of Verdict | 9th Cir. No. 3.5 | Stipulate |

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

1

# UNITED STATES DISTRICT COURT

2

## NORTHERN DISTRICT OF CALIFORNIA

3

## OAKLAND DIVISION

4

5    GENENTECH, INC.,

6         Plaintiff,

7              v.                                   Case No. 4:23-cv-00909-YGR

8    BIOGEN MA INC.,

9         Defendant.

10

11

12

13

14

15

16

17

18   **JURY INSTRUCTIONS (COVER PAGE)**

19

20   DATED: _____

21

22

23                              _____

                               UNITED STATES DISTRICT JUDGE

24

25

26

27

28

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

# Jury Instruction # 1

## Duty of Jury
## (Court Reads and Provides Written Instructions at End of Case)

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

AUTHORITY:    Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 ed., *last updated* November 2024), Instruction No. 1.4

DATE SUBMITTED:    _____

DATE REVISED:    _____

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

# Jury Instruction # 2

# Claims and Defenses

Genentech and Biogen were parties to a license agreement granting Biogen certain rights to a patent, called Cabilly, in return for certain payments to Genentech, including royalties on certain sales of Biogen's product Tysabri.

Genentech is claiming that Biogen breached the agreement by failing to pay royalties on Tysabri that Biogen manufactured in or imported into the United States before Cabilly expired on December 18, 2018, but sold after that date. Biogen contends that its obligation to pay Genentech royalties under the agreement ended when Cabilly expired on December 18, 2018, and no further royalties are due. Genentech has the burden of proving its breach of contract claim by a preponderance of the evidence.

AUTHORITY:       Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 ed., *last updated* November 2024), Instruction No. 1.5*

*Modified to be read after the close of evidence and to reflect the claim in this case.

DATE SUBMITTED:        _____

DATE REVISED:        _____

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

1

## Jury Instruction # 3

## Burden of Proof – Preponderance of the Evidence

When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

AUTHORITY:      Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 ed., *last updated* November 2024), Instruction No. 1.6

DATE SUBMITTED:        _____

DATE REVISED:        _____

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

# Jury Instruction # 4

# What is Evidence

The evidence you are to consider in deciding what the facts are consists of:

    1. the sworn testimony of any witness;

    2. the exhibits that are admitted into evidence;

    3. any facts to which the lawyers have agreed; and

    4. any facts that I have instructed you to accept as proved.

AUTHORITY:        Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 ed., *last updated* November 2024), Instruction No. 1.9

DATE SUBMITTED:     \_\_\_\_\_

DATE REVISED:     \_\_\_\_\_

# Jury Instruction # 5

# What is Not Evidence

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

AUTHORITY:        Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 ed., *last updated* November 2024), Instruction No. 1.10

*Modified to be read after the close of evidence and to avoid duplication with Instruction No. 6.

DATE SUBMITTED:        _____

DATE REVISED:        _____

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

1

**Jury Instruction # 6**

2

3

**Evidence for Limited Purpose**

4

Some evidence was admitted only for a limited purpose.

5

If I instructed you that an item of evidence was admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

6

7

8

9

AUTHORITY:       Manual of Model Civil Jury Instructions for the District Courts of the Ninth

10

Circuit (2017 ed., *last updated* November 2024), Instruction No. 1.11*

11

*Modified to be read after the close of evidence.

12

13

DATE SUBMITTED:       _____

14

DATE REVISED:       _____

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

# Jury Instruction # 7

# Direct and Circumstantial Evidence

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

AUTHORITY:      Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 ed., *last updated* November 2024), Instruction No. 1.12*

                      *Modified to move the example of circumstantial evidence from the end of the instruction to directly after the concept of circumstantial evidence is introduced.

DATE SUBMITTED:     _____

DATE REVISED:     _____

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

1

2

3

## Jury Instruction # 8

## Ruling on Objections

4

5

There are rules of evidence that control what can be received into evidence. When a lawyer asked a question or offered an exhibit into evidence and a lawyer on the other side thought that it was not permitted by the rules of evidence, that lawyer may have objected.

6

7

8

If I overruled the objection, the question could be answered, or the exhibit was received. If I sustained the objection, the question could not be answered, or the exhibit was not received. If I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been.

9

10

I may have ordered that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

11

12

13

14

15

AUTHORITY:    Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 ed., *last updated* November 2024), Instruction No. 1.13*

16

*Modified to be read after the close of evidence.

17

18

DATE SUBMITTED:    _____

19

DATE REVISED:    _____

20

21

22

23

24

25

26

27

28

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

# Jury Instruction # 9

## Bench Conferences and Recesses

From time to time during the trial, it became necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury was present in the courtroom, or by calling a recess. Please understand that while you were waiting, we were working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we have done what we could to keep the number and length of these conferences to a minimum. I did not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

AUTHORITY:          Manual of Model Civil Jury Instructions for the District Courts of the Ninth
                    Circuit (2017 ed., *last updated* November 2024), Instruction No. 1.20

DATE SUBMITTED:          _____

DATE REVISED:          _____

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Jury Instruction # 10

# Credibility of Witnesses

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

    (1) the opportunity and ability of the witness to see or hear or know the things testified to;

    (2) the witness's memory;

    (3) the witness's manner while testifying;

    (4) the witness's interest in the outcome of the case, if any;

    (5) the witness's bias or prejudice, if any;

    (6) whether other evidence contradicted the witness's testimony;

    (7) the reasonableness of the witness's testimony in light of all the evidence; and

    (8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

AUTHORITY:          Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 ed., *last updated* November 2024), Instruction No. 1.14*

DATE SUBMITTED:          _____

DATE REVISED:          _____

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

1

2

## Jury Instruction # 11

3

## Expert Opinion Testimony

4

You have heard testimony from experts who testified about their opinions and the reasons for those opinions.  This opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education of these witnesses.

5

6

Such opinion testimony should be judged like any other testimony.  You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

7

8

9

10

11

12    AUTHORITY:          Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 ed., *last updated* November 2024), Instruction No. 2.13

13

14

15    DATE SUBMITTED:          _____

16    DATE REVISED:          _____

17

18

19

20

21

22

23

24

25

26

27

28

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

1

## Jury Instruction # 12

2

3

## Deposition in Lieu of Live Testimony

4

     A deposition is the sworn testimony of a witness taken before trial.  The witness is placed
under oath to tell the truth and lawyers for each party may ask questions.  The questions and
answers are recorded.

5

6

     Insofar as possible, you should consider deposition testimony, presented to you in court in
lieu of live testimony, in the same way as if the witness had been present to testify.

7

8

9

10

11    AUTHORITY:     Manual of Model Civil Jury Instructions for the District Courts of the Ninth
     Circuit (2017 ed., *last updated* November 2024), Instruction No. 2.4

12

13

14    DATE SUBMITTED:     _____

15    DATE REVISED:     _____

16

17

18

19

20

21

22

23

24

25

26

27

28

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

1

## Jury Instruction # 13

2

## Use of Interrogatories

3

4        Evidence was presented to you in the form of answers of one of the parties to written
interrogatories submitted by the other side.  These answers were given in writing and under oath

5    before the trial in response to questions that were submitted under established court procedures.
You should consider the answers, insofar as possible, in the same way as if they were made from

6    the witness stand.

7

8

9

10    AUTHORITY:        Manual of Model Civil Jury Instructions for the District Courts of the Ninth
Circuit (2017 ed., *last updated* November 2024), Instruction No. 2.11

11

12

13    DATE SUBMITTED:        _____

14    DATE REVISED:        _____

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Jury Instruction # 14**

**Use of Requests for Admission**

      Evidence was presented to you in the form of admissions to the truth of certain facts.  These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures.  You must treat these facts as having been proved.

AUTHORITY:        Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 ed., *last updated* November 2024), Instruction No. 2.12

DATE SUBMITTED:     _____

DATE REVISED:     _____

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

# Jury Instruction # 15

# Transition Instruction

  The Court will now explain the substantive law applicable to the breach of contract claim that the plaintiff, Genentech, has asserted against the defendant, Biogen, in this action.

AUTHORITY:  Judge Gonzalez Rogers' Standing Order Re: Pretrial Instructions in Civil Cases (*last updated* March 17, 2025), § 3(g)(ii)(B)*

      *Modified to reflect the claim in this case.

DATE SUBMITTED:  _____

DATE REVISED:   _____

1

## Jury Instruction # 16±

2

## Genentech's Claim: Breach of Contract
## Breach of Contract – Introduction

3

4

    As I stated previously, Genentech and Biogen were parties to a patent license agreement
5   granting Biogen the right to use the Cabilly patent in exchange for certain payments to Genentech,
    including royalties on certain sales of Biogen's product Tysabri.  Genentech contends the license
6   requires royalties on all sales of Tysabri that Biogen manufactured in or imported into the United
    States before the date Cabilly expired, December 18, 2018.
7

8       It is undisputed that Biogen did not pay Genentech royalties on Tysabri that was made in or
    imported into the United States before Cabilly expired but sold after that date.

9

10      Genentech contends the license agreement required Biogen to pay those royalties, and that
    Biogen breached the agreement by failing to do so.

11      Biogen denies this claim.

12      Genentech contends the agreement required royalties on sales of Tysabri that Biogen
    manufactured in or imported into the United States before the date Cabilly expired, December 18,
13  2018, but sold thereafter.  Biogen did not pay such royalties, which Genentech contends breached
    the agreement.
14

15      Biogen contends its obligation to pay royalties to Genentech based on sales of Tysabri ended
    when Cabilly expired, and no further royalties are owed to Genentech.  Therefore, Biogen denies
16  that it has breached the agreement.

17

18

19  ±Genentech's proposal in green text; Biogen's proposal in blue text.

20  AUTHORITY:        Judicial Council of California Civil Jury Instructions (2025 ed.), CACI No.
21                    300*

22                    *Modified to reflect the claim in this case.

23

24  DATE SUBMITTED:        _____

25  DATE REVISED:        _____

26

27

28

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

**Jury Instruction # 17**

**Patent – Definition**

The agreement at issue is a patent license.  A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, offering to sell, or selling an invention within the United States, or from importing it into the United States, during the term of the patent. When the patent expires, the right to make, use or sell the invention is dedicated to the public.

AUTHORITY:      N.D. Cal. Model Patent Jury Instructions, August  2017 (updated October 2019), at C.1 Appendix (Glossary) (as modified).

DATE SUBMITTED:         _____

DATE REVISED:           _____

1
2

# Jury Instruction # 18

3
4

## Genentech's Claim: Breach of Contract
## Breach of Contract – Essential Factual Elements

5
6

To recover damages from Biogen for breach of contract, Genentech must prove all of the following:

7

    1. That Biogen failed to do something that the contract required it to do;

8

    2. That Genentech was harmed; and

9

    3. That Biogen's breach of contract was a substantial factor in causing Genentech's harm.

10
11
12
13
14

AUTHORITY:      Judicial Council of California Civil Jury Instructions (2025 ed.), CACI No. 303*

15
16
17

                 *Modified to reflect that there is no dispute the parties entered into a contract nor any dispute that Genentech performed its material obligations under the contract.

18
19

DATE SUBMITTED:     _____

20

DATE REVISED:     _____

21
22
23
24
25
26
27
28

# Jury Instruction # 19±

## Genentech's Claim: Breach of Contract
## Interpretation – Disputed Words

Genentech and Biogen dispute the meaning of the following words in their contract:

1.03 "Calendar Quarter" shall mean each three month period commencing January 1, April 1, July 1 and October 1 of each year during the term of this Agreement.

[ . . . ]

1.13. "Net Sales" shall mean the gross invoice or contract price to Third Party customers for Finished Product. Finished Product used or consumed by Licensee or its Affiliates or Designees as part of the delivery of services to customers for which Licensee derives compensation shall be considered Net Sales at the gross invoice or contract price of like Finished Product which are sold to customers. If Licensed Product is sold in combination with one or more active ingredients, Net Sales shall be calculated by multiplying Net Sales of the combination product by the fraction A/(A+B) where A is the sales price of the Finished Product in the combination when sold separately and B is the total sales price of all other active ingredients in the combination when sold separately. If the Finished Product and the other active ingredients are not sold separately, the percentage of the total cost of the combination product attributed to Cost of Product shall be multiplied times the sales price of the combination product to arrive at Net Sales. For all Licensed Product used or consumed by others than Licensee, Licensee shall be entitled to deduct 5% from Net Sales in lieu of all other deductions such as taxes, shipping charges, allowances and the like prior to calculating royalties due.

Net Sales for Bulk Products shall be calculated by doubling the gross invoice or contract price of Bulk Products sold to non-affiliated Third Party customers.

The method of calculating Net Sales of materials in form other than Finished Product or Bulk Product that can be converted into Finished Product shall be established by the Parties prior to the first sale or transfer of any such material by Licensee, its Affiliates or Designees to a non-affiliated Third Party.

[ . . . ]

3.03.  Earned Royalties.

(i)     Licensee shall pay to Genentech a royalty of four and one-half percent (4.5%) of all Net Sales of all Licensed Product sold in the United States.

(ii)    Licensee shall pay to Genentech a royalty of three and one-half percent (3.5%) of all Net Sales of all Licensed Product sold in the Territory outside the United States. . . .

[ . . . ]

4.02. Reports. Within sixty (60) days after the end of each Calendar Quarter following the First Commercial Sale of Licensed Product, Licensee shall furnish to Genentech a written report of all sales of all Licensed Product subject to royalty under Article III during such Calendar Quarter. Such report shall include, without limitation, (i) the determination of Net Sales as specified in Section 1.13, setting forth the amount of gross receipts, Net Sales, and any deduction taken from gross receipts to arrive at Net Sales, for each of Finished Product and Bulk Product separately; and (ii) the royalty payment then due. Concurrently with each report pursuant to this Section 4.02, Licensee shall make the royalty payment then due.

[ . . . ]

7.01. Term. The term of this Agreement will commence on the Effective Date and remain in full force and effect until the expiration of the last patent within the Licensed Patents (the "Term"), unless earlier terminated in accordance with this Article VII. Licensee's obligation to pay royalties to Genentech under this Agreement shall commence, on a country-by-country basis (i) on the date of First Commercial Sale of Licensed Product, and (ii) shall continue, on a country-by-country basis, until expiration of the last patent within the Licensed Patents containing a Valid Claim that would be infringed by the manufacture, use, sale, offer for sale or importation of Licensed Product.

[ . . . ]

7.05. Effect of Termination. Termination of this Agreement in whole or in part for any reason shall not relieve Licensee of its obligations to pay all fees and royalties that shall have accrued hereunder prior to the effective date of termination. Termination of this Agreement by or as to Licensee shall result in the termination of the licenses granted to Licensee and to all sublicensees of Licensee pursuant to this Agreement; provided, however, that upon termination the licenses granted to Licensee and to sublicensees shall continue for a period of ninety (90) days for the disposition of any existing inventory of Licensed Product and Licensee shall pay royalties in accordance with Section 3.03 on all such Licensed Product sold during such period. The provisions of Article IV, Article V, Article VI, Article VIII, this Section 7.05 and Section 7.06 shall survive termination of this Agreement for any reason.

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

1     Genentech and Biogen dispute the meaning of the following terms in their contract: Section

2   1.03 (definition of "Calendar Quarter"), Section 1.12 (definition of "Licensed Product"), Section

3   1.13 (definition of "Net Sales"), Section 3.03 ("Earned Royalties"), Section 4.02 ("Reports"),

    Section 7.01 ("Term"), and Section 7.05 ("Effect of Termination").

4         The parties disagree whether these contract terms require Biogen to pay Genentech royalties

5   on Tysabri that Biogen made in or imported into the United States before Cabilly expired but sold

    after that date.  As the plaintiff, Genentech must prove by a preponderance of evidence that its

6   interpretation is correct.

7         In deciding what the words of a contract mean, you must decide what the parties intended at

    the time the contract was created.  You may consider the usual and ordinary meaning of the

8   language used in the contract as well as objective evidence of the parties' expressed intent,

    including the circumstances surrounding the making of the contract, the object, nature and subject

9   matter of the contract, and the subsequent conduct of the parties.  You may not consider subjective

    evidence of either party's unexpressed intent.

10        The following instructions may also help you interpret the words of the contract:

11

12

13  ±Genentech's proposal in green text; Biogen's proposal in blue text; Biogen's proposed additions to

    Genentech's proposal in purple text.

14  AUTHORITY:        Judicial Council of California Civil Jury Instructions (2025 ed.), CACI No.

15                    314*

16                    *Modified to reflect the claim in this case.

17                    Cal. Civil Code § 1647 ("A contract may be explained by reference to the

18                    circumstances under which it was made, and the matter to which it relates.").

19                    CACI No. 318 ("In deciding what the words in a contract meant to the

                      parties, you may consider how the parties acted after the contract was created

20                    but before any disagreement between the parties arose.").

21                    *Morey v. Vannucci*, 64 Cal. App. 4th 904, 912 (1998) ("The mutual intention

                      to which the courts give effect is determined by objective manifestations of

22                    the parties' intent, including the words used in the agreement, as well as

23                    **extrinsic evidence of such objective matters as the surrounding**
                      **circumstances under which the parties negotiated or entered into the**
                      **contract; the object, nature and subject matter of the contract; and the**
24                    **subsequent conduct of the parties.**" (emphasis added)).

25                    *Founding Members of the Newport Beach Country Club v. Newport Beach*

26                    *Country Club, Inc.*, 109 Cal. App. 4th 944, 956 (2003) ("California
                      recognizes the objective theory of contracts . . . . The parties' undisclosed

27                    intent or understanding is irrelevant to contract interpretation." (citations
                      omitted)).

28

1 Witkin, Summary of California Law Contracts (11th ed. 2017), § 767(2) ("The modern approach, however, is to avoid the terminology of 'intention,' and to look for expressed intent, under an objective standard.").

1 Witkin, Summary of California Law Contracts (11th ed. 2017), § 772(1) ("Acts of the parties, subsequent to the execution of the contract and before any controversy has arisen as to its effect, may be looked to in determining the meaning.).

2 Matthew Bender Practice Guide: California Contract Litigation, Ch. 21, *Parties' Intentions at Time of Contracting Governs Interpretation*, 21.14[1]

DATE SUBMITTED:        _____

DATE REVISED:        _____

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

1

**Jury Instruction # 20**

2

3

**Genentech's Claim: Breach of Contract
Interpretation – Meaning of Ordinary Words**

4

5

     You should assume that the parties intended the words in their contract to have their usual and ordinary meaning unless you decide that the parties intended the words to have a special meaning.

6

7

8

9

10

AUTHORITY:     Judicial Council of California Civil Jury Instructions (2025 ed.), CACI No. 315

11

12

13

DATE SUBMITTED:    \_\_\_\_\_

DATE REVISED:    \_\_\_\_\_

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## Jury Instruction # 21

## Post-Expiration Royalties

To find that the Agreement requires royalties for products manufactured before but sold after the expiration of the licensed patent, you must find that the Agreement contains language which explicitly obligates Biogen to pay royalties for products sold after the licensed patent's expiration.

OBJECTION:        Genentech objects to this instruction in full.

BIOGEN'S CITED AUTHORITY:

> *Pacesetter Inc. v. SurModics, Inc.*, No. CV 11-3964 RSWL FFMX, 2011 WL 5075611 at *4 (C.D. Cal. Oct. 25, 2011)

> *Pacesetter Inc. v. SurModics, Inc.*, 520 F. App'x 579 (9th Cir. 2013)

> *AM Int'l, Inc. v. Graphic Mgmt. Assocs., Inc.*, 44 F.3d 572, 574 (7th Cir. 1995) (Posner, J.)

DATE SUBMITTED:        _____

DATE REVISED:        _____

1    **BIOGEN'S POSITION**

2        Biogen's proposed instruction is drawn from rulings in the Ninth and Seventh Circuits

3    holding that a licensor must show explicit language in an agreement to claim post-expiration

4    royalties.  In *Pacesetter*, a California District Court found that "[tail] royalties are only warranted

5    when language in license agreements explicitly obligates the licensee to pay for royalties after the

6    patent's expiration," granting summary judgment for the licensee.  *Pacesetter Inc. v. SurModics,*

7    *Inc.*, No. CV 11-3964 RSWL FFMX, 2011 WL 5075611 at *4 (C.D. Cal. Oct. 25, 2011) (applying

8    Minnesota contract law).  The Ninth Circuit affirmed.  *Pacesetter, Inc. v. SurModics, Inc.*, 520 F.

9    App'x 579 (9th Cir. 2013) (non-precedential).  Judge Posner, writing for the Seventh Circuit in *AM*

10   *Int'l, Inc. v. Graphic Mgmt. Assocs., Inc.*, reached the same legal conclusion—that no royalty

11   obligation arises for licensed products sold after patent expiration unless the agreement

12   unambiguously says so.  44 F.3d 572, 577 (7th Cir. 1995) (Posner, J.) (applying Illinois contract

13   law).

14       Although *Pacesetter* and *AM Int'l* are nonbinding authorities that arose under Minnesota and

15   Illinois law, they reflect the legal principle that tail royalties are only warranted when language in

16   license agreements explicitly obligates the licensee to pay for royalties after the patent's expiration.

17   This is consistent with the common tenet of contract interpretation under the laws of California,

18   Minnesota and Illinois law which prohibits a court from reading new terms into an agreement.

19   *Gallagher v. Lenart*, 367 Ill. App. 3d 293, 301, 854 N.E.2d 800, 807 (2006), aff'd, 226 Ill. 2d 208,

20   874 N.E.2d 43 (2007) (applying Illinois law) ("a court cannot alter, change or modify the existing

21   terms of a contract or add new terms or conditions to which the parties do not appear to have

22   assented"); *Erickson v. Horing*, No. C4-02-138, 2002 WL 31163611, at *13 (Minn. Ct. App. Oct. 1,

23   2002) (applying Minnesota law) (holding that it was improper to "add additional terms to the

24   agreement."); *Liu v. Premier Fin. All., Inc.*, No. B284545, 2018 WL 5835354, at *2 (Cal. Ct. App.

25   Nov. 8, 2018) (applying California law) ("a court may not read terms into an agreement that are not

26   there."); *see also* Cal. Civ. Proc. Code § 1858 ("In the construction of [an] instrument, [the] Judge is

27   simply to ascertain and declare what is in terms or in substance contained therein, not to insert what

28

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all.").  Moreover, while licensing is a matter of state contract law, where, as here, important federal policies regarding patent rights are at issue, there should be one national rule.  The Ninth and Seventh Circuits are the only circuit courts to have addressed the issue, and those decisions support giving the requested instruction.  Thus, the Court should adopt Biogen's proposed instruction.

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

**GENENTECH'S OBJECTION TO INSTRUCTION 21:**

The Court should reject Biogen's proposed "Post-Expiration Royalties" instruction that it has patterned on *Pacesetter Inc. v. SurModics, Inc.*, 2011 WL 5075611 (C.D. Cal. Oct. 25, 2011), *aff'd*, 520 F. App'x 579 (9th Cir. 2013). Biogen proposes to instruct the jury that, unless the license expressly states otherwise, a licensor may not collect royalties on product manufactured using its patented technology but sold after the patent expired.

As the Court may recall, *Pacesetter*, an unpublished district court case applying Minnesota law, was a linchpin of Biogen's unsuccessful summary judgment motion. Genentech provided a thorough explanation for why *Pacesetter* does not accurately describe California statutory or common law (or the law anywhere, for that matter). Those same arguments make it clear that it would be error for the Court to give Biogen's proposed instruction at trial:

1.    *Pacesetter* was a breach of contract claim governed by Minnesota law. Here the License includes a choice-of-law provision designating California law as controlling.

2.    *Pacesetter*'s observation that "case authority" requires payment of post-expiry royalties only if the contract "explicitly obligates the licensee to pay for royalties after the patent's expiration," *id.* at *4, relies on a single decision, *AM Int'l, Inc. v. Graphic Mgmt. Assocs., Inc.*, 44 F.3d 572 (7th Cir. 1995), that applied Illinois law and did not actually hold that in any event. Because Biogen's proposed instruction cites this case, too, it should be noted that *AM Int'l* involved a wholly different issue. That license required royalties on products purchased between January 1 and July 23, 1991, and shipped within several months after patent expiry. *See id.* at 574. The Seventh Circuit merely held that, in light of those specific limits, no royalties were due on products purchased *before* January 1, 1991, and then shipped within several months after patent expiry. *Id.*; *see also id.* at 577 ("[I]f a contract says 'X after January 1,' we hardly expect it to say 'and not-X

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

until January 1,' since that is plainly implied."). *AM Int'l* does not provide any more support than *Pacesetter* for the all-purpose rule Biogen's proposed instruction claims is the law.

3.      *Pacesetter* did not grapple with either of two Southern District of New York decisions—*Studiengesellschaft Kohle v. Novamont Corp.*, 532 F. Supp. 234 (S.D.N.Y. 1981) and *Forbo-Giubiasco, S.A. v. Congoleum Corp.*, 1985 WL 1827 (S.D.N.Y. June 26, 1985)—that rejected a rule that there must be "explicit" language about post-expiry royalties to require a licensee to pay them. *Pacesetter* inexplicably ignored those decisions even though the licensor cited them. *See* 2011 WL 8154136. These two decisions are important for another reason. They were on the books in 2004 when Genentech and Biogen negotiated the Cabilly License. *Pacesetter* was decided in 2011. If any authority could be interpreted as providing the background rule against which the parties negotiated, it was these two decisions holding that post-expiry royalties were owed under similar patent licenses, not a single unpublished decision from seven years later, applying Minnesota law and suggesting there is a presumption against post-expiry royalties.

One further point bears noting. Among the extrinsic evidence Biogen seeks to exclude (*see* its Motion *In Limine* No. 3) are five licenses under which it paid hundreds of millions of dollars royalties on Tysabri manufactured before and sold after those licensed patents expired. It is undisputed that *none* of those licenses included express language requiring Biogen to pay these royalties. If the law were actually as Biogen's proposed instruction states, what possible explanation could there be for these massive royalty payments from Biogen the law supposedly holds were never owed?

Genentech respectfully requests that the Court reject Biogen's proposed instruction.

1

## Jury Instruction # 22

## Genentech's Claim: Breach of Contract
## Interpretation – Meaning of Technical Words

You should assume that the parties intended technical words used in the contract to have the meaning that is usually given to them by people who work in that technical field, unless you decide that the parties clearly used the words in a different sense.

AUTHORITY:       Judicial Council of California Civil Jury Instructions (2025 ed.), CACI No. 316

DATE SUBMITTED:        _____

DATE REVISED:        _____

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

1

## Jury Instruction # 23

2

### Genentech's Claim: Breach of Contract
### Interpretation – Construction of Contract as a Whole

3

4

     In deciding what the words of a contract meant to the parties, you should consider the whole contract, not just isolated parts. You should use each part to help you interpret the others, so that all the parts make sense when taken together.

5

6

7

8

9

10    AUTHORITY:        Judicial Council of California Civil Jury Instructions (2025 ed.), CACI No. 317

11

12

13    DATE SUBMITTED:      _____

14    DATE REVISED:      _____

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

# Jury Instruction # 24

## Genentech's Claim: Breach of Contract
## Interpretation – Industry Custom or Practice

In deciding what the words in a contract meant to the parties, you should assume that the parties, being specialists in their trade or industry, followed industry customs or practices that were in effect at the time the contract was negotiated.

OBJECTION:         Biogen objects to this instruction in full.

GENENTECH'S CITED AUTHORITY:

Special instruction regarding industry custom or practice, modeled after CACI Nos. 316 and 318.

*Brown v. Goldstein*, 34 Cal. App. 5th 418, 436 (2019) ("[E]xpert testimony regarding industry usage and custom . . . . suggests plaintiffs' proposed interpretation accords with the industry customs and practices that were in effect at the time the contract was negotiated.").

*Heggblade-Marguleas-Tenneco, Inc. v. Sunshine Biscuit, Inc.*, 59 Cal. App. 3d 948, 956 (1976) ("[P]ersons carrying on a particular trade are deemed to be aware of prominent trade customs applicable to their industry. The knowledge may be actual or constructive.").

*Southern Pacific Transportation Co. v. Santa Fe Pacific Pipelines, Inc.*, 74 Cal. App. 4th 1232, 1244 (1999) ("Parties are presumed to contract pursuant to a fixed and established usage and custom of the trade or industry.").

1 Witkin, Summary of California Law Contracts (11th ed. 2017), §§ 778, 779

2 Matthew Bender Practice Guide: California Contract Litigation, Ch. 21, *Terms May Be Explained by Course of Dealing, Trade Usage, and Course of Performance*, 21.24[1]-[2]

DATE SUBMITTED:         _____

DATE REVISED:         _____

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

1

## GENENTECH'S POSITION

2

Genentech's proposed instruction on "Industry Custom or Practice" recites settled California

3

law in brief and neutral text.

4

Abundant precedent holds that evidence "regarding industry usage and custom" is

5

admissible to show a party's "proposed interpretation accords with the industry customs and

6

practices that were in effect at the time the contract was negotiated." *Brown v. Goldstein*, 34 Cal.

7

App. 5th 418, 436 (2019); *see also Heggblade-Marguleas-Tenneco, Inc. v. Sunshine Biscuit, Inc.*,

8

59 Cal. App. 3d 948, 956 (1976) (the parties' knowledge of relevant industry customs may be

9

"actual or constructive"); *Hayter Trucking Inc. v. Shell Western E & P, Inc*. 18 Cal. App. 4th 1, 15

10

(1993) ("If both parties are engaged in that trade, the parties to the contract are deemed to have used

11

[terms] according to their *different and peculiar sense as shown by such trade usage and parol*

12

*evidence is admissible to establish the trade usage*[.]" (emphasis added)).  Leading treatises say the

13

same thing.  "Usage or custom may be looked to, both to explain the meaning of language and to

14

imply terms, where no contrary intent appears from the terms of the contract." 1 Witkin, Summary

15

of California Law Contracts (11th ed. 2017), § 778(2).   "Custom and usage evidence is relevant to

16

aid in the interpretation of a contract."  2 Matthew Bender Practice Guide: California Contract

17

Litigation, Ch. 21, *Terms May Be Explained by Course of Dealing, Trade Usage, and Course of*

18

*Performance*, § 21.24[2] (citations omitted).

19

Finally, the instruction comports as well with statutory law.  Code of Civil Procedure

20

§ 1856(c) specifically authorizes the terms of a contract to "be explained or supplemented by course

21

of dealing *or usage of trade* or by course of performance," (emphasis added), and Civil Code

22

§ 1644 similarly provides: "The words of a contract are to be understood in their ordinary and

23

popular sense . . . *unless a special meaning is given to them by usage*, in which case the latter must

24

be followed." (emphasis added).  *See also* Civil Code § 1645 ("Technical words are to be

25

26

27

28

interpreted *as usually understood by persons in the profession or business to which they relate*, unless clearly used in a different sense." (emphasis added))*. The model Judicial Council of California Civil Jury Instructions ("CACI") cite these provisions of the civil code in the "Sources and Authorities" providing legal support for CACI No. 315 ("Interpretation – Meaning of Ordinary Words") and CACI No. 316 ("Interpretation – Meaning of Technical Words"), which are among those instructions in the stipulated submission to which Biogen has not objected.

Biogen's objection to this particular instruction therefore is meritless. Both sides have retained licensing industry custom-and-practice experts, as did Biogen in the case it brought several years ago as the licensor where it made the exact same claim as Genentech for royalties on licensed product sold after patent expiry. Biogen is entitled to offer its own evidence on industry custom and practice at trial, and make whatever objections it wants to Genentech's evidence. But it is not entitled to prevent the jury from getting instruction on the appropriate way to consider it.

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

**BIOGEN'S OBJECTION TO INSTRUCTION 24:**

Biogen objects in full to this instruction, which is not a standard instruction. Genentech cites to California Civil Jury Instructions ("CACI") Nos. 316 and 318, but neither mention industry custom or practice (and instructions mapping to each are already included as Instructions 22 and 25). There is insufficient supporting evidence to give any charge on custom and practice, and the proposed charge omits important legal concepts.

In contract cases, custom and practice evidence is only appropriate to clarify the meaning of a specific contractual term with a "specialized or technical meaning" within a field. Genentech's proposed instruction fails to explain this, likely because that is not the subject of its experts' intended testimony. *See GIC Real Est., Inc. v. ACE Am. Ins. Co.*, 2018 WL 5310832, at *5 (N.D. Cal. Aug. 20, 2018). Indeed, the authority Genentech cites in support of its instruction all pertain to terms with a specialized meaning apart from its ordinary meaning. *See S. Pac. Transportation Co. v. Santa Fe Pac. Pipelines, Inc.*, 74 Cal. App. 4th 1232, 1244 (1999) (the opinion was tied to the interpretation of the term "market value."); *Heggblade-Marguleas-Tenneco, Inc. v. Sunshine Biscuit, Inc.*, 59 Cal. App. 3d 948, 955 (Ct. App. 1976) (the opinion was specifically tied to "the quantity figure" specified under the agreement); *Brown v. Goldstein*, 34 Cal. App. 5th 418, 436 (2019) (the opinion concerned "revenue-sharing provisions such as the one set forth in" the agreement).

Courts routinely reject purported custom or practice evidence when not tied to specific language in a contract. *See, e.g.*, *Corbrus, LLC v. 8th Bridge Cap., Inc.*, 2022 WL 4239055, at *21 (C.D. Cal. Sept. 13, 2022) (holding that the "testimony [was] not proper custom and usage evidence clarifying the specialized meaning of a term because it [did] not opine on the meaning given to any particular contractual term or phrase in the relevant industry."); *Remy v. Olds*, 34 P. 216 (Cal. 1893) ("since the words were not used in any special or local sense, [] the meaning of the words was not a matter to be established by expert testimony."). The proposed instruction is inconsistent with the law because, as explained in Biogen's Motion *in Limine* No. 1, Genentech plans to tell the jury what parties normally "expect," imposing its own views of the parties' unexpressed subjective intent,

rather than presenting evidence on an industry-specific meaning of a term in the Agreement.  By this, Genentech hopes to use custom to import a payment obligation into the Agreement which is not found in its language, but instead directly contradicted by it.

Moreover, in order for an industry custom to be relevant, Genentech must show that the contracting parties were aware of that custom at the time of the negotiations.  *See e.g.*, 1 Witkin 779 ("For a custom to be operative, the parties must assent to it, or one party must know or have reason to know the other party intends it to govern, or it must be so generally known that a person should be aware of it."); 14A Cal. Jur. 3d Contracts § 243 ("before it may be so used, it must appear that the parties were aware of the existence of the usage").  The proposed instruction does not reflect this foundational requirement or that Genentech has that burden.

Nor is there any factual support for giving an instruction on the custom and practice with respect to tail royalties.  Several witnesses, including the primary negotiators of the Agreement, testified they were unaware of any industry custom of paying tail royalties at the time of contracting.  Dkt. 99-8 (Schwartz Dep. Tr.) at 100:14-18 (testimony from Genentech's primary negotiator); Ex. 99-6 (Wong Dep. Tr.) at 63:21-25 (testimony from Genentech's royalty controller); Battle Dep. Tr. at 74:24-75:17 (testimony from Elan's negotiator).  Because Genentech's industry custom argument is "so fundamentally unsupported that it can offer no assistance to the jury, [] such testimony [must] be excluded" and an instruction on this point would be irrelevant and confusing.  *Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-CV-00288-JF HRL, 2012 WL 1595112, at *7 (N.D. Cal. May 4, 2012).

1

## Jury Instruction # 25

2

## Genentech's Claim: Breach of Contract
3
## Interpretation – Construction by Conduct

4

        In deciding what the words in a contract meant to the parties in 2004, you may consider how
5
the parties acted after the contract was created but before any disagreement between the parties
arose.
6

7

8

9

10   AUTHORITY:          Judicial Council of California Civil Jury Instructions (2025 ed.), CACI No.
                         318*
11
                         *Modified in red to reflect time contract was executed.
12
     DATE SUBMITTED:          _____
13
     DATE REVISED:            _____
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Jury Instruction # 26

## Genentech's Claim: Breach of Contract
## Interpretation – Party's Understanding of its Other Agreements

In deciding what the words in a contract meant to the parties, you may consider evidence of how a party understood the terms of its similar contracts with third parties.

OBJECTION:          Biogen objects to this instruction in full.

GENENTECH'S CITED AUTHORITY:

> Special instruction regarding industry custom or practice, modeled after CACI No. 318.

> *Firlotte v. Jessee*, 76 Cal. App. 2d 207, 211 (1946) (quoting treatise that "it has repeatedly been held that" evidence of third-party agreements may be relevant for interpreting similar contracts (citation omitted)).

> *Faigin v. Signature Grp. Holdings, Inc.*, 211 Cal. App. 4th 726, 748 (2012) ("Evidence of a party's contract with a third party may be relevant to show customary contract terms.").

> *Brawthen v. H & R Block, Inc.*, 52 Cal. App. 3d 139, 148 (1975) (admitting evidence that a party had made certain oral representations to third parties in order to show that party's "common habit of usage").

> *Heston v. Farmers Insurance Group*, 160 Cal. App. 3d 402, 414-15 (1984) (holding that defendant's construction of third-party contract was admissible to support plaintiff's interpretation because it "show[s] that both he and Farmers intended the Agreement to mean the same thing").

> 1 Witkin, Summary of California Law Contracts (11th ed. 2017), § 779

> 1 McCormick on Evidence § 198 (9th ed.) ("[I]t seems clear that contracts of a party with third persons may show the party's customary practice and course of dealing and thus supply useful insights into the terms of the present agreement.")

DATE SUBMITTED:          _____

DATE REVISED:          _____

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

**GENENTECH'S POSITION**

Genentech's proposed instruction regarding a "Party's Understanding of its Other Agreements" reflects longstanding California precedent that evidence of a party's third-party contracts can be relevant to the interpretation of an ambiguous contract. Such an instruction is particularly apt in this case because (i) Biogen's licensing expert plans to opine that post-expiry royalties are never due unless the license has express language requiring them; and (ii) Biogen paid post-expiry royalties on Tysabri to five patent licensors where the agreements did *not* include such language. (Biogen's expert opined that they must have done so by "mistake.").

The language of Genentech's proposed instruction is simple and neutral, and it emulates the style of the related model instruction on "Construction by Conduct" provided by the Judicial Council of California. *Compare* Genentech's Proposed Instruction ("In deciding what the words in a contract meant to the parties, you may consider evidence of how a party understood the terms of its similar contracts with third parties.") *with* CACI No. 318 ("In deciding what the words in a contract meant to the parties, you may consider how the parties acted after the contract was created but before any disagreement between the parties arose.").

The proposed instruction is also faithful to the litany of decisions describing the principle that a factfinder reviewing an ambiguous contract may consider evidence of a party's contracts with third parties. The principal that "contracts of a party with third persons may show the party's customary practice and course of dealing and thus supply useful insights into the terms of the present agreement," 1 McCormick on Evidence § 198 (9th ed.), has been applied in California decisions going back decades. *See, e.g., Faigin v. Signature Grp. Holdings, Inc.*, 211 Cal. App. 4th 726, 748 (2012) ("Evidence of a party's contract with a third party may be relevant to show customary contract terms."); *Firlotte v. Jessee*, 76 Cal. App. 2d 207, 211 (1946) ("it has repeatedly been held that" evidence of third-party agreements may be relevant for interpreting similar contracts

(citation omitted)); *Brawthen v. H & R Block, Inc.*, 52 Cal. App. 3d 139, 148 (1975) (admitting evidence that a party had made certain oral representations to third parties in order to show that party's "common habit of usage"); *Heston v. Farmers Insurance Group*, 160 Cal. App. 3d 402, 414–15 (1984) ("[t]he most damaging evidence offered to support the [plaintiff's] interpretation" in a coverage dispute was legal brief Farmers filed in prior litigation against another insured with a similar policy).

The proposed instruction also incorporates the limitation that third-party contracts are relevant only if they are similar to the agreement over which the parties are litigating. *See, e.g., Warner Bros., Inc. v. Curtis Management Group, Inc.*, 1995 WL 420043, at *12 (C.D. Cal. Mar. 31, 1993) (party's "understanding of the scope of its rights under similar agreements" is relevant to the meaning of an ambiguous contract); *Vaughn v. Teran*, 2024 WL 3395824, at *8 (E.D. Cal. July 12, 2024) (considering nine similar agreements over the course of more than 20 years to infer "common practice"); *Hennefer v. Butcher*, 182 Cal. App. 3d 492, 500–01 (1986) (in determining terms of an ambiguous contract, "[t]he usual and reasonable terms found in similar contracts can be looked to" (citation omitted)).

Because Genentech's proposed instruction on a "Party's Understanding of its Other Agreements" accurately and in plain language states the law in California, the Court should overrule Biogen's objection to it.

**BIOGEN'S OBJECTION TO INSTRUCTION 26**:

Biogen objects in full to this instruction, which is not a standard instruction. Genentech cites to CACI No. 318, which does not discuss contract interpretation based on a party's understanding of its other contracts. Instruction 25 already directly maps to CACI No. 318. In fact, the CACI instructions for contract cases include no sample instruction specifically tailored to third-party agreements. This instruction should not be used for three reasons.

First, instructing the jury on how a party "understood" the terms of "similar contracts" is vague and will create jury confusion. There is enough difficulty in instructing the jury on what the parties to the Agreement understood as to that agreement. Asking the jury to determine the intent of parties to a third-party agreement, involving different parties, patents, products, and terms, without the context or negotiation history of those agreements, is unreasonable. In addition, nothing in the instruction explains what constitutes a "similar" contract or how to use that similarity in interpreting the Agreement.

Second, Genentech will be unable to produce admissible evidence sufficient to render this instruction appropriate. As explained in Biogen's Motion *in Limine* No. 3, it is improper to use third-party contracts to interpret the Agreement at issue, which involves different parties, different language, and different circumstances. In *Corky McMillin Const. Servs., Inc. v. U.S. Specialty Ins. Co.*, 597 F. App'x 925 (9th Cir. 2015), the Ninth Circuit agreed that "[t]he district court correctly found the proffered extrinsic evidence was not relevant, because it only pertained to a different insurance transaction and policy [and] sheds no light on the [party's] own 'reasonable expectations' at the time of contracting." *Id.* at 926 (emphases added); *see also Bird v. PSC Holdings I, LLC*, 2013 WL 12108106, at *4 (S.D. Cal. Apr. 5, 2013) ("[i]t is not apparent how the terms of [contracts between Defendant and other employees] bear on whether Defendants breached Plaintiff's contract."); *Weinstein v. Katapult Grp., Inc.*, 2022 WL 1125768, at *3 (N.D. Cal. Apr. 15, 2022) (sustaining objection to discovery of defendant's agreements with third parties because "agreements with third parties are not relevant to the instant dispute").

Genentech's cited authorities are inapplicable here. *Heston* involved a "form" agreement "with a paragraph identical to the one in the [a]greement" at issue. *See Heston v. Farmers Ins. Grp.*, 160 Cal. App. 3d 402, 414 (Ct. App. 1984). *Faigun* and *Firlotte* do not even involve written agreements—*Faigun* involved an implied-in-fact employment agreement where the issue was whether the plaintiff could only be terminated for "good cause," while *Firlotte* similarly involved an oral agreement for the exclusive use of pastureland, where the defendant's conversations and dealings with a third party relating to the exact same land at issue was admitted. *Faigin v. Signature Grp. Holdings, Inc.*, 211 Cal. App. 4th 726, 747, 150 Cal. Rptr. 3d 123, 141 (2012); *Firlotte v. Jessee*, 76 Cal. App. 2d 207, 211 (1946). And *Brawthen* did not even involve the use of third-party contracts to interpret a disputed written term. Instead, it involved an oral modification to an existing employment agreement, where the defendant's statements to other employees were admitted to determine whether to enforce the oral modification. *Brawthen v. H & R Block, Inc.*, 52 Cal. App. 3d 139, 148 (1975).

Finally, even if third-party agreements are admitted, they would have no more evidentiary weight than any other piece of evidence – for example, the term sheet sent by Genentech at the start of negotiations, or the drafts exchanged by the parties during negotiation of the Agreement. Giving a special instruction sanctioning consideration of third party agreements specifically, but not giving an instruction letting the jury know they can consider each other category of extrinsic evidence, would give improper weight to third party agreements. Adding such an instruction would confuse the jury and potentially mislead them about the relevance and weight of third-party contracts in interpreting the Agreement.

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

# Jury Instruction # 27

## Genentech's Claim: Breach of Contract
## Introduction to Contract Damages

If you decide that Genentech has proved its claim against Biogen for breach of contract, you also must decide how much money will reasonably compensate Genentech for the harm caused by the breach. This compensation is called "damages." The purpose of such damages is to put Genentech in as good a position as it would have been if Biogen had performed as promised.

To recover damages for any harm, Genentech must prove that when the contract was made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as a result of the breach of the contract.

Genentech also must prove the amount of its damages, but Genentech does not have to prove the exact amount of damages. You must not speculate or guess in awarding damages.

Genentech claims damages in the form of lost royalties and interest.

AUTHORITY:     Judicial Council of California Civil Jury Instructions (2025 ed.), CACI No. 350*

*Modified to reflect the claim and disputed damages in this case.

DATE SUBMITTED:     _____

DATE REVISED:     _____

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **<u>STOP</u>**
# **(CLOSING ARGUMENTS)**

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

# Jury Instruction # 28

## Duty to Deliberate

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

AUTHORITY:      Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 ed., *last updated* November 2024), Instruction No. 3.1

DATE SUBMITTED:      _____

DATE REVISED:      _____

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

# Jury Instruction # 29

# Consideration of Evidence – Conduct of the Jury

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media.

This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors.  If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings.  If any juror is exposed to any outside information, please notify the court immediately.

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

1

2      AUTHORITY:         Manual of Model Civil Jury Instructions for the District Courts of the Ninth
3                         Circuit (2017 ed., *last updated* November 2024), Instruction No. 3.2

4

5      DATE SUBMITTED:          _____

6      DATE REVISED:            _____

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Jury Instruction # 30

## Communication with Court

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Courtroom Deputy, signed by any one or more of you.  No member of the jury should ever attempt to communicate with me except by a signed writing.  I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

AUTHORITY:      Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2017 ed., *last updated* November 2024), Instruction No. 3.3

DATE SUBMITTED:          _____

DATE REVISED:              _____

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

1

**Jury Instruction # 31**

2

**Return of Verdict**

3

4          A verdict form has been prepared for you.  After you have reached unanimous agreement on

5     a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the Courtroom Deputy that you are ready to return to the courtroom.

6

7

8

9     AUTHORITY:          Manual of Model Civil Jury Instructions for the District Courts of the Ninth

10                              Circuit (2017 ed., *last updated* November 2024), Instruction No. 3.5

11

12     DATE SUBMITTED:          _____

13     DATE REVISED:          _____

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**

1    DATED: May 23, 2025                    **WILLIAMS & CONNOLLY LLP**

2

3                                          By:    /s/ Paul B. Gaffney
                                                  _____

4                                          Paul B. Gaffney (State Bar No. 345431)
                                           Charles L. McCloud (*pro hac vice*)
5                                          Ricardo Leyva (State Bar No. 319939)
                                           pgaffney@wc.com
6                                          lmccloud@wc.com
                                           rleyva@wc.com
7

8                                          **SKAGGS FAUCETTE LLP**
                                           Jeffrey E. Faucette
9                                          jeff@skaggsfaucette.com

10                                         *Attorneys for Plaintiff Genentech, Inc.*

11                                             **DECHERT LLP**

12

13                                         By:    /s/ Martin J. Black
                                                  _____

14                                         Nisha Patel (SBN 281628)
                                           nisha.patelgupta@dechert.com
15                                         US Bank Tower, 633 West 5th Street, Suite 4900
                                           Los Angeles, CA 90071
16                                         (213) 808-5700

17                                         Charles Hsu (SBN 328798)
                                           charles.hsu@dechert.com
18                                         45 Fremont St. 26th Floor
                                           San Francisco, CA 94105
19                                         (650) 813-4800

20
                                           Martin J. Black (*pro hac vice*)
21                                         martin.black@dechert.com
                                           Cira Centre, 2929 Arch Street
22                                         Philadelphia, PA 19104
                                           (215) 994-2664
23

24                                         Katherine A. Helm (*pro hac vice*)
                                           khelm@dechert.com
25                                         Three Bryant Park, 1095 Avenue of the Americas
                                           New York, New York 10036-6797
26                                         (212) 698-3500

27
                                           *Attorneys for Defendant Biogen MA Inc.*
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>ATTESTATION</u>

Pursuant to Civil L.R. 5-1, I, Paul B. Gaffney, hereby attest that concurrence in the filing of this document has been obtained from each of the other signatories.

Dated: May 23, 2025

By:    */s/* Paul B. Gaffney
_____
Paul B. Gaffney

**PARTIES' JOINT SET OF PROPOSED JURY INSTRUCTIONS**