Paul B. Gaffney (State Bar No. 345431)
Charles L. McCloud (pro hac vice)
Ricardo Leyva (State Bar No. 319939)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC  20024
Tel: (202) 434-5000
Fax: (202) 434-5029

Jeffrey E. Faucette (State Bar No. 193066)
SKAGGS FAUCETTE LLP
Four Embarcadero Center
Suite 1400 PMB #72
San Francisco, CA 94111
Tel: (415) 295-1197
Fax: (888) 980-6547

*Attorneys for Plaintiff Genentech, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| GENENTECH, INC., | Case No. 23-cv-00909-YGR (LB) |
| Plaintiff, | **GENENTECH'S MOTION *IN LIMINE* NO. 1 TO LIMIT TESTIMONY OF FORMER ELAN LAWYER CARL BATTLE** |
| vs. | |
| BIOGEN MA, INC., | Hearing Date: June 9, 2025 |
| Defendant. | Time: 9:00 a.m. |
| | Courtroom: 1, 4th floor |
| | Judge: Hon. Yvonne Gonzalez Rogers |

Carl Battle is a retired Elan Pharmaceuticals patent lawyer who negotiated for Elan and Biogen over terms of the 2004 Cabilly patent license ("License"). ████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████

Nonetheless, during summary judgment Biogen relied on testimony from Mr. Battle ████

████████████████████████████ Under California law, a contract party's uncommunicated intent is not admissible extrinsic evidence on what an agreement requires. The Court should enter an order *in limine* under Fed. R. Evid. 402 precluding Biogen from introducing this testimony from Mr. Battle's deposition or eliciting it from him at trial if he appears in person.

## **MOTION**

Biogen and Elan jointly developed Tysabri and commercialized it collaboratively until 2013 when Biogen bought out Elan's rights to the product. *See* ECF 92 at 3 n.1.

In January 2004, with the clinical testing of Tysabri complete, Biogen and Elan initiated negotiations with Genentech for a license authorizing the manufacture of Tysabri using Cabilly's patented antibody manufacturing technology. *See* Ex. 2. Mr. Battle and a lawyer from Biogen named Raymond Arner came to South San Francisco to meet with Genentech representatives, after which Genentech emailed them a signature-ready agreement. *See* Ex. 3. Section 3.03 of the draft required Biogen and Elan to pay royalties on "all Net Sales of all Licensed Product," with the latter term defined to include all Tysabri made prior to Cabilly's expiration, and the former term including all sales, whenever they occurred.

Elan and Biogen provided Genentech with edits to the License in an email from Mr. Battle on February 21, 2004. *See* Ex. 4. They did not object to paying royalties on "all Net Sales of all

---

[1] The cited Exhibits are attached to the Declaration of Charles L. McCloud filed herewith.

**GENENTECH'S MOTION IN LIMINE NO. 1**

Licensed Product." They did propose this additional langauge in to Section 7.01, which Genentech agreed to incorporate in substantially the same form:

> 7.01. Term. The term of this Agreement will commence on the Effective Date and remain in full force and effect until the expiration of the last patent within the Licensed Patents (the "Term"), unless earlier terminated in accordance with this Article VII. Licensee's obligation to pay royalties to Genentech under this Agreement shall commence, on a country-by-country basis, (i) on the date of First Commercial Sale of Licensed Product for which a royalty is owed in accordance with Article III, and (ii) shall continue until expiration of the last patent within the Licensed Patents containing a Valid Claim that would be infringed by the manufacture, use, sale, offer for sale, distribution, marketing, importation or exportation of Licensed Product.

Ex. 4 at 15–16. Biogen contends this added language circumscribed the Section 3.03 royalty obligation and excused Biogen and Elan from paying royalties of Tysabri held in inventory when Cabilly expired—by definition, "Licensed Product" under the agreement—but sold after that.



---

[2] "Tail royalties" is a term the parties used sometimes to describe royalties owed on product manufactured under license and then sold after the licensed patent expired.

**GENENTECH'S MOTION IN LIMINE NO. 1**

Nonetheless, Biogen has relied on this latter testimony of Mr. Battle's supposed uncommunicated intention as "extrinsic evidence" the parties actually *did* intend the License to grant Biogen and Elan this enormous windfall.  ECF 92 at 20-21.

Any such testimony is inadmissible and should be excluded at trial.  California law is clear that a contract party's subjective, uncommunicated expectation of what a contract required is not admissible as extrinsic evidence on the meaning of an ambiguous contract provision.  The "relevant intent" of the parties is "objective," *i.e.*, "the intent manifested in the agreement and by surrounding conduct—rather than the subjective belief of the parties."  *United Commer. Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992).  "Undisclosed statements regarding intent or understanding . . . are irrelevant to contract interpretation under the objective theory of contracts." *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109

**GENENTECH'S  MOTION IN LIMINE NO. 1**

Cal. App. 4th 944, 960 (2003). Federal courts in this district recognize that "California courts have consistently held that '[t]he parties' undisclosed intent or understanding is irrelevant to contract interpretation.'"[3] *Microsoft Corp. v. Hon Hai Precision Indus. Co.*, 2020 WL 5080319, at *11 (N.D. Cal. Aug. 25, 2020) (quoting *Founding Members*, 109 Cal. App. 4th at 956). Consequently, testimony from someone involved in the negotiations regarding "what he subjectively understood" is inadmissible in litigation over the meaning of a contract. *Winet v. Price*, 4 Cal. App. 4th 1159, 1166 n.3 (1992); *see also Oakland-Alameda Cnty. Coliseum, Inc. v. Oakland Raiders, Ltd.*, 197 Cal. App. 3d 1049, 1058 (1988) ("[U]nexpressed intent cannot be used to interpret a contract.").

Mr. Battle's testimony is clear that ███████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████ Testimony regarding his subjective intent that goes beyond this is simply inadmissible.

## CONCLUSION

For the reasons stated above, the Court should grant the motion and preclude Biogen from introducing Mr. Battle's subjective intent regarding the License.

---

[3] The rule is well-settled and is reflected in treatises on the fundamentals of California contract law. *See, e.g.*, Witkin, Summary of California Law Contracts (11th ed. 2017), § 767(2) ("The modern approach, however, is . . . to look for expressed intent, under an objective standard."); 2 Matthew Bender Practice Guide: California Contract Litigation, Ch. 21, *Court Looks for Objective Manifestations of Intent*, 21.14[1] ("It is the outward expression of the agreement, rather than a party's unexpressed intention, that a court will enforce.").

**GENENTECH'S MOTION IN LIMINE NO. 1**

DATED:  May 23, 2025

**WILLIAMS & CONNOLLY LLP**

By:   */s/* Paul B. Gaffney

Paul B. Gaffney (State Bar No. 345431)
Charles L. McCloud (*pro hac vice*)
Ricardo Leyva (State Bar No. 319939)
pgaffney@wc.com
lmccloud@wc.com
rleyva@wc.com

**SKAGGS FAUCETTE LLP**
Jeffrey E. Faucette
jeff@skaggsfaucette.com

*Attorneys for Plaintiff Genentech, Inc.*

**GENENTECH'S  MOTION IN LIMINE NO. 1**