# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GENENTECH, INC.,**<br>Plaintiff,<br>vs.<br>**BIOGEN MA, INC.,**<br>Defendant. | CASE NO. 23-cv-00909-YGR<br><br>**PRETRIAL ORDER NO. 4 RE: MOTIONS *IN LIMINE***<br><br>Re: Dkt. Nos. 124, 125, 126, 128, 129, 130, 131, 132 |

The Court, having considered the remaining motions *in limine* submitted by plaintiff Genentech, Inc. (Dkt. Nos. 124, 125, 126) and by defendant Biogen MA, Inc. (Dkt. Nos. 128, 129, 130, 131, 132), and for the reasons expressed on the record at the pretrial conference held on June 9, 2025, **ORDERS** as follows:

First, as an overarching matter, the Court notes that its Standing Order cautions counsel that:

> Parties frequently misuse motions *in limine* in an attempt to exclude broad categories of possible evidence. Such motions are routinely denied. Any motion *in limine* must specify the precise exhibits or proffered testimony the party seeks to exclude.

(*See* Court's Standing Order re: Pretrial Instructions in Civil Cases, paragraph 4.a.) To the extent the parties have failed to heed that advice, their motions *in limine* have been denied, as set forth herein. Further, with respect to all rulings, if a party opens the door, the other party may request consideration, but such request must be done outside the presence of the jury.

Second, the Court observes that the parties' disputes primarily center around the admissibility of extrinsic evidence, including third party licenses (Dkt. Nos. 125, 130, 131). As a general matter, the Court will permit the introduction of extrinsic evidence if such evidence is relevant and the relevance is not outweighed by the risk of unfair prejudice or jury confusion. For a third party license to be relevant, the party proffering the evidence must show that (1) the third

party license contains language similar to the language at issue in this case, or (2) the license will be used to rebut evidence, testimony, or argument regarding the industry custom and practice of requiring tail royalties.

To the extent this Order excludes certain evidence and testimony, a party may seek leave to use such evidence and testimony for purposes of impeachment.

I. **GENENTECH'S MOTIONS *IN LIMINE***
**Genentech's No. 1: To Limit Testimony From Carl Battle (Elan Pharmaceutical's Former In-House Counsel) re Unexpressed Subjective Intent**

The motion is **GRANTED**.

The parties' unexpressed subjective intent is not relevant. Neither party will be permitted to introduce testimony or evidence regarding unexpressed subjective intent.

**Genentech's No. 3: To Exclude Evidence of Third Party Cabilly Licenses**

The motion is **GRANTED** as to the forty-seven (47) licenses identified in Dkt. No. 139-9 and **DENIED** as to the remaining twenty-two (22) licenses identified in Trial Exhibit 295.

Genentech has shown that the forty-seven licenses included in Dkt. No. 139-9 are not relevant for the following reasons.

- The license never resulted in a commercialized product;
- The terms of the license required a lump sum payment instead of ongoing royalties;
- The license was superseded by an amended license or settlement agreement; or,
- The commercialized product was taken off the market before Cabilly expired.

With respect to the remaining twenty-two licenses identified in Trial Exhibit 295, the Court will allow evidence of the Centocor (Trial Exhibit 56) and Bristol Myers Squibb (Trial Exhibit 59) Cabilly licenses, as Biogen has shown that these licenses "contain[ed] explicit language requiring tail royalties . . . demonstrating that Genentech knows how to write a tail royalty provision . . . ." (Dkt. No. 147-1 at 4.) Evidence of the remaining licenses may be admitted (1) upon a showing of relevance based on similarities in language, or (2) to rebut evidence, testimony, or argument regarding the industry custom and practice of requiring tail royalties.

**Genentech's No. 5: To Exclude Defendant's Trial Exhibit Nos. 202-A and 202-B**

The motion is **DENIED**.

This document was obtained from the files of Timothy Schwartz, Genentech's primary negotiator. Although Mr. Schwartz testified he did not recall "what [he] did in relation to the negotiations after receipt of the term sheet" (Schwartz Dep. Tr. 67:21–25), Genentech has not shown that the term sheet was not relied on by Genentech or Biogen during the negotiations. The document can speak for itself as it was found in Genentech's business records for the license at issue.

## II. BIOGEN'S MOTIONS *IN LIMINE*[1]
### Biogen's Nos. 1–2 Re Experts
### No. 1: To Exclude All Testimony From Kathleen Denis

The motion is **GRANTED**.

Dr. Denis's Opinion Nos. 1 (¶¶ 38–46) and 2 (¶¶ 47–77) are based on the evidence and applicability of industry custom and practice, but Genentech has not offered a factual predicate for these opinions. During the June 9, 2025 pretrial conference, Genentech represented that the factual predicate for Dr. Denis's opinions was Sean Johnston's testimony regarding his awareness of industry custom and practice. Mr. Johnston did in fact testify that he was aware of an industry custom and practice requiring tail royalties (Johnston Dep. Tr. at 50:9–15, 51:8–14, 79:6–11) and can testify to that fact subject to the predicate reference below. Here, however, Dr. Denis does not appear to have relied on, or had knowledge of, such testimony in forming her opinions.[2] Genentech has not established a factual predicate for Dr. Denis's Opinion Nos. 1 and 2. Accordingly, this testimony is excluded.

Dr. Denis's Opinion No. 3 (¶¶ 78–100) is also excluded for the independent reason that it encroaches on the jury's fact-finding role. The jury is fully capable of assessing evidence of

---

[1] Pursuant to the Court's Pretrial Order No. 2, Biogen withdrew its Motion *in Limine* No. 1 with respect to Ms. Bennis and Motion *in Limine* No. 2. (Dkt. No. 156.) Biogen's withdrawal notwithstanding, the Court **STRIKES** paragraphs 6 and 8 of Ms. Bennis's reply report. Ms. Bennis may not offer the opinions set forth in these paragraphs.

[2] Dr. Denis did not cite or otherwise refer to Mr. Johnston's testimony regarding his knowledge of industry custom and practice in her expert reports or during her deposition.

Biogen's conduct to determine whether Biogen was aware of and/or conformed to industry custom and practice.

**No. 2: To Exclude All Testimony From Christopher Seaton**

The motion is **DENIED**.

Mr. Seaton's Opinion Nos. 1 (¶¶ 38–46) and 2 (¶¶ 47–71) are also based on the evidence and applicability of industry custom and practice. Unlike Dr. Denis, Mr. Seaton appears to have relied on, or at least had knowledge of, Mr. Johnston's awareness of industry custom and practice in forming his opinions. (*See* Seaton Dep. Tr. at 63:4–8 ("I am aware that Mr. Schwartz's boss, Sean Johnston, felt there was such a custom and practice [of paying tail royalties] . . . ."); *see also id*. at 62:2–5 ("I also know that Mr. Schwartz's boss was aware of a custom and practice, because I believe he said that in his deposition."); *id*. at 62:11–13 ("It's consistent with Mr. Schwartz's boss, Sean Johnston.").) However, it is unclear to the Court whether Mr. Johnston had this awareness in 2004.[3] If Genentech can show that Mr. Johnston had knowledge of industry custom and practice in 2004, Mr. Seaton may offer Opinion Nos. 1 and 2.

Even if Genentech is able to establish a factual predicate for Mr. Seaton's opinions, Mr. Seaton may not testify regarding any party's knowledge or awareness of industry custom and practice. (Dkt. No. 143-4 ("Seaton Opening Report") ¶¶ 46 ("This demonstrates that Elan knew the custom for limiting Tail Royalties . . . but did not employ it in the Cabilly License it negotiated with Genentech just over five years earlier."); 56 ("Ms. Dickerson's testimony confirms that Biogen shares my opinions."); 60 ("Its [Biogen's] statements in that litigation confirm that Biogen shares my view of licensing industry custom and practice."); 67 ("Abbott clearly did not think its terms excused a Tail Royalty obligation . . . ."); 71 ("Neither of those companies understood that language as relieving its Tail Royalty obligations.").)

Mr. Seaton also may not tell the jury how to interpret any license. (*Id.* ¶ 59 ("This is the correct interpretation of the TMC license.").)

---

[3] Although Mr. Johnston testified as to his general knowledge of industry custom and practice, Biogen did not ask Mr. Johnston whether he had such knowledge in 2004.

4

**No. 3: To Exclude All Testimony or Argument Using Third Party Licenses (Trial Exhibit Nos. 30, 40–73, 77, 79–84)**

The motion is **DENIED**.

The Court will permit evidence of Biogen's licenses with third parties The Medicines Company (Trial Exhibit No. 30), GSK (Trial Exhibit No. 40), Centocor (Trial Exhibit No. 41), Lonza (Trial Exhibit No. 46), and PDL (Trial Exhibit No. 48).

With respect to the balance (Trial Exhibit Nos. 42–45, 47, 49–73, 77, 79–84), the Court will permit such evidence (1) upon a showing that the third party license contains language similar to the language at issue in this case, or (2) to rebut evidence, testimony, or argument regarding industry custom and practice.

**Biogen's No. 4: To Exclude Evidence of The Medicines Company Litigation (Trial Exhibit Nos. 30–39 and 78)**

The motion is **DENIED**.

Genentech has shown that the license agreement between Biogen and The Medicines Company contains language similar to the license at issue in this case.

**Biogen's No. 5: To Exclude Evidence of Biogen's Internal Projections (Trial Exhibit Nos. 24–29)**

The motion is **DENIED**. Not only does it exceed the number of allowed motions, but the documents are highly relevant and not unfairly prejudicial.

This Order terminates Docket Numbers 124, 125, 126, 128, 129, 130, 131, 132.

**IT IS SO ORDERED.**

Dated: June 17, 2025

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**